UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONOVAN S.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 22-CV-05383-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance (DIB) and supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## I.    ISSUES FOR REVIEW

A.  Whether the ALJ Erred in Evaluating Medical Opinion Evidence.

B.  Whether the ALJ Erred at Step Two.

## II.    BACKGROUND

Plaintiff filed a Title II application for a period of disability and DIB on July 3, 2019, and a Title XVI application for SSI and on March 7, 2019, alleging a disability

onset date of June 3, 2015 on both applications. Administrative Record ("AR") 77, 95, 116, 136.

Plaintiff's applications were denied initially and on reconsideration. AR 94, 112, 134, 154. Administrative Law Judge ("ALJ") Allen G. Erickson held a hearing on May 13, 2021, and issued a decision on June 1, 2021 that claimant was not disabled. AR 40–74, 19–39. Plaintiff now seeks judicial review of the ALJ Erickson's June 2021 decision. Dkt. 10.

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.   DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments: major depressive disorder (MDD), generalized anxiety disorder (GAD), borderline personality disorder (BPD), posttraumatic stress disorder (PTSD), schizophrenia, and cannabis use disorder. AR 24. Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform a full range of work at all exertional levels with nonexertional limitations. AR 27.

Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform his past relevant work. AR 32. At step five, the ALJ found

1  plaintiff could perform other jobs that exist in significant numbers in the national

2  economy; therefore, the ALJ determined at that plaintiff was not disabled. AR 33–34.

3      A.  <u>Whether the ALJ Erred in Evaluating Medical Opinion</u>

4      Plaintiff assigns error to the ALJ's evaluation of the medical opinion of (1) Dr.

5  David Widlan and (2) Dr. Tasmyn Bowes. Dkt. 10, pp. 2–8, 12–15.

6      1.  <u>Medical Opinion Standard of Review</u>

7      Plaintiff submitted his applications after March 27, 2017. AR 77, 95, 116, 136.

8  Under the rules applicable to this case, to properly evaluate medical opinions, the ALJ

9  must "articulate how [he] considered the medical opinions" and "how persuasive [he]

10  find[s] all of the medical opinions" by considering their supportability, consistency, the

11  medical source's examining relationship with the claimant, the medical source's

12  specialization, and other factors. 20 C.F.R. §§ 404.1520c(c); 416.920c(c). The ALJ is

13  specifically required to consider the two most important factors, supportability and

14  consistency. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The supportability factor requires

15  the ALJ to consider the relevance of the objective medical evidence and the supporting

16  explanations presented by the medical source to justify their opinion. 20 C.F.R. §§

17  404.1520c(c)(1); 416.920c(c)(1). The consistency factor involves consideration of how

18  consistent a medical opinion is with the other record evidence. 20 C.F.R. §§

19  404.1520c(c)(2); 416.920c(c)(2). "Even under the new regulations, an ALJ cannot reject

20  an examining or treating doctor's opinion as unsupported or inconsistent without

21  providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32

22  F.4th 785, 792 (9th Cir. 2022).

23      2.  <u>Dr. David Widlan</u>

24

25

1    On February 27, 2019, Dr. Widlan completed a psychological evaluation by

2  reviewing plaintiff's medical record and conducting a mental status exam. AR 600–02.

3  He diagnosed plaintiff with schizophrenia and PTSD, and opined that based on these

4  impairments, plaintiff would be mostly markedly and severely limited in performing basic

5  work activities – and the overall severity rating given by Dr. Widlan was "severe". AR

6  601–02. The ALJ discounted Dr. Widlan's opinion because (1) it was based on a limited

7  review of plaintiff's record, and (2) because it was inconsistent with the plaintiff's

8  longitudinal record. AR 31–32.

9    With regards to the ALJ's first reason, whether a medical source examined a

10  claimant or simply reviewed the claimant's medical record is a factor an ALJ can

11  consider when evaluating that medical source's opinion. *See* 20 C.F.R. §§

12  416.920c(c)(3)(v), 416.920c(c)(3)(v). Here, the ALJ pointed out that Dr. Widlan had only

13  reviewed a discharge summary which included a diagnosis for paranoid schizophrenia

14  and AD/HD. AR 32, 439–565. Yet the record shows that, in formulating his opinion, Dr.

15  Widlan conducted a mental status exam. *See* AR 603. Therefore the ALJ's finding is not

16  supported by the record.

17    Further, the new regulations make it clear that a medical opinion's supportability

18  and consistency are the two most important factors an ALJ must consider. *See* 20

19  C.F.R. §§ 404.1520c(a); 416.920c(a). That Dr. Widlan did not review all of plaintiff's

20  medical record is not itself a sufficient reason an ALJ can offer to properly discount a

21  medical opinion. The Court, therefore, finds the ALJ erred in discounting Dr. Widlan's

22  opinion for this reason.

23

24

25

1    With regards to the ALJ's second reason, an ALJ can measure a medical

2 opinion's persuasiveness based on its consistency with both medical and nonmedical

3 sources in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). Here, the ALJ

4 found that plaintiff's longitudinal record was inconsistent with Dr. Widlan's findings

5 because the record showed plaintiff "has been generally stable" despite limited

6 treatment, his mental symptoms were often associated with situational stressors, and he

7 was often observed with largely normal presentations. *See* AR 31–32.

8    The ALJ's assessment of plaintiff's record is not supported by substantial

9 evidence. The evidence cited by the ALJ does show that plaintiff attended counseling

10 sessions, he had concerns related to his roommate and housing situation, and his

11 mental functioning has been found to be within normal limits. *See* AR 579, 603, 636,

12 638, 641, 706–23, 730. But the evidence also shows plaintiff struggled with engagement

13 during his sessions, his trauma symptoms were found to be causing "significant distress

14 and impairment," he was at risk of deterioration, he was found to be at risk of serious

15 harm to himself and others, and he was found to have dysfunction in role performance

16 (school or work). AR 644, 697, 708, 710, 721–23, 725. The ALJ points to Dr. Widlan's

17 own mental status exam as it shows that plaintiff's speech and memory were within

18 normal limits, but the exam also shows plaintiff displayed paranoia, and his perception,

19 concentration, and insight and judgment were not within normal limits. *See* AR 603.

20    Plaintiff also often reported auditory and visual hallucinations, for example, that

21 he hears "dark, raspy voices that tell me to hurt people." And he stated that he "sees

22 shadow people that are following him." He reported that he has been suffering from

23 these issues since the age of 15. See AR 600, 632, 635, 639, 642, 644, 726, 730. One

24

25

1  of plaintiff's counselors wrote that it was unclear how much of plaintiff's functioning is

2  impacted by his use of hallucinogenic or marijuana, but they also show the

3  hallucinations "occur in the absence of substance use, and occur when client

4  experiences an increase in symptoms of depression." AR 638, 642, 730. Contrary to the

5  ALJ's finding, plaintiff record does not indicate his mental symptoms were stable. Thus,

6  in discounting Dr. Widlan's opinion for its inconsistency with plaintiff's longitudinal

7  record, the ALJ erred.

8         Harmless error principles apply in the Social Security context. *Molina v. Astrue*,

9  674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to

10  the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination."

11  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*,

12  674 F.3d at 1115. In this case, the ALJ's error in evaluating Dr. Widlan's opinion is not

13  harmless because a proper evaluation could change the ALJ's assessment of plaintiff's

14  RFC and may affect the hypotheticals provided to the VE. As further discussed below,

15  this is consequential to the ALJ's overall determination of nondisability, therefore the

16  ALJ's error requires reversal.

17         3.  Dr. Tasmyn Bowes

18         On May 5, 2016 and on June 20, 2018, Dr. Tasmyn Bowes completed two

19  psychological evaluations through intake of plaintiff's self-reports and by conducting a

20  mental status examination. *See* AR 575–80, 588–94. In the May 2016 evaluation, Dr.

21  Bowes diagnosed plaintiff with major depressive disorder, recurrent, moderate, while in

22  the June 2018 evaluation, Dr. Bowes diagnosed plaintiff with borderline PD, persistent

23  depressive disorder, dysthymia, and unspecified anxiety. AR 578, 591. In both

24

25

evaluations, Dr. Bowes opined that based on plaintiff's impairments, plaintiff would be mildly to moderately limited in: understanding, remembering, and persisting in tasks by following detailed instructions; performing within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision; learning new tasks, communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, completing a normal workday and workweek without interruptions from psychologically based symptoms, setting realistic goals, and planning independently. AR 578–79, 591–92. The ALJ found Dr. Bowes's opinion "persuasive" as it was with consistent with the longitudinal record. AR 31.

Plaintiff contends the ALJ erred because despite crediting Dr. Bowe's opinion, the ALJ did not incorporate her opined limitations into his RFC. Dkt. 10, pp. 12–15.

A plaintiff's RFC is "not the least an individual can do despite his or her limitations or restrictions, but the most." Social Security Ruling (SSR) 96-8p. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

In pertinent part, the ALJ found plaintiff has the RFC to perform a full range of work with the following nonexertional limitations: understand, remember, and apply simple, short instructions; perform routine, predictable tasks; not in a fast paced, production type environment; make simple decisions; exposure to occasional, routine workplace changes; and occasional interaction with the general public and coworkers. AR 27. This RFC properly reflects Dr. Bowe's findings that plaintiff would be mildly to moderately limited performing basic work activities. Dr. Bowe's opinion that plaintiff would be moderately limited with detailed instructions, performing tasks within a

schedule, communicating with appropriate behavior, maintaining appropriate behavior,

and completing a normal workday was "translated" in the ALJ's assessment that plaintiff

be limited to simple instructions, routine and predictable tasks, simple decisions, and

occasional interaction with others. *See Rounds*, 807 F.3d at 1006. Accordingly, the

Court finds the ALJ did not err in evaluating Dr. Bowe's opinion.

      B.  Whether the ALJ Erred at Step Two

      Plaintiff assigns error to the ALJ's finding at step two that his right-hand pain, left-

hand second finger injury, bilateral knee pain, bilateral hip pain, bilateral shoulder pain,

right ankle pain, and low back pain are non-severe impairments. Dkt. 10, pp. 9–12.

      At step two, an impairment is not considered to be "severe" if it does not

"significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are those "abilities and

aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.920(c); SSR 85-

28. An impairment is not severe if the evidence establishes only a slight abnormality

that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28;

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

      Here, in declining to find plaintiff's right-hand pain, left-hand second finger injury,

bilateral knee pain, bilateral hip pain, bilateral shoulder pain, right-ankle pain, and low

back pain as severe impairments, the ALJ explained that plaintiff's record showed no

ongoing treatment for these conditions and no further indication that a cane was

necessary. AR 24. The ALJ also identified plaintiff's activities of daily living. AR 25.

      Evidence cited by the ALJ shows plaintiff injured his hands after a physical

altercation and after breaking a car window, but imaging revealed plaintiff had no

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

fractures and his hands were otherwise within normal limits. AR 614–15, 623–24. The ALJ also cited to plaintiff's musculoskeletal exam, administered by Dr. Liu, which showed his range of motion for his back, knees, shoulders, elbows, forearms, and wrists were all normal. AR 657. While there was some tenderness with plaintiff's right ankle and some weakness with his right wrist, plaintiff's exam showed no muscle spasm, atrophy, or joint deformations. AR 658. The record also plaintiff was observed walking without an assistive device and was engaged in several activities, including bike riding, skateboarding, fishing, and playing video games for several hours. AR 576, 635, 657, 674, 686, 725–26.

In contrast, plaintiff points out that he has been diagnosed for scoliosis with upper back deformity, chronic back pain, left hip pain with limited range of motion, chronic right knee pain, bilateral shoulder pain, right ankle pain with history of right ankle injury, right hand injury with ulnar nerve damage, and peripheral neuropathy of the right upper and right lower extremities. AR 657. Further, at the initial and reconsideration review levels of plaintiff's applications, Dr. Staley and Dr. Alto both found that his severe medically determinable impairments included spine disorders, disorders of muscle, ligament and fascia, and dysfunction-major joints. AR 102, 658. Based on these diagnoses, the ALJ could have reasonably found that plaintiff's conditions have "more than a minimal effect on [his] ability to work." *See Smolen*, 80 F.3d at 1290.

Plaintiff also argues the ALJ's error at step two "infected the ALJ's analysis at Steps 4 and 5." Dkt. 10, p. 11. Though step two is "merely a threshold determination meant to screen out weak claims" and "not meant to identify the impairments that

should be taken into account when determining the RFC," at the RFC phase, the ALJ must still consider the claimant's limitations from all impairments, including those that are not severe. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987)) "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis omitted).

Here, in assessing plaintiff's RFC, the ALJ considered the opinion of Dr. Liu, who had performed the musculoskeletal exam the ALJ cited to, as well the opinions of Dr. Staley and Dr. Alto. *See* AR 32. But the ALJ did not include any limitations to accommodate plaintiff's physical impairments at all, instead finding that plaintiff has the RFC to perform "a full range work at all exertional levels." *See* AR 27. Given the diagnoses in plaintiff's record suggesting severe physical impairments, the Court finds the ALJ erred at step two.

## C.  Remand With Instructions for Further Proceedings

Plaintiff requests that this Court remand for further proceedings. Dkts. 10, p. 2; 12 p. 5. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

Remanding for further administrative proceedings is the appropriate remedy here. The ALJ committed harmful error, necessitating the re-evaluation of the ALJ's finding at step two and the reassessment of Dr. Widlan's opinion. Therefore, the ALJ is directed to re-evaluate plaintiff's severe impairments at step two and Dr. Widlan's medical opinion, and reassess plaintiff's RFC on remand. *See* SSR 96-8p (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). A new set of hypothetical questions may be asked of the VE during a new hearing, and the ALJ is directed to re-evaluate step five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform, given any changes to the hypothetical questions and the RFC.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 27th day of December, 2022.

Theresa L. Fricke
United States Magistrate Judge